IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Peter Pulido,                                          Case No. 3:07 CV 1898

                Plaintiff,                  MEMORANDUM OPINION
                                      AND ORDER

    -vs-
                                                JUDGE JACK ZOUHARY

Commissioner of Social Security,

                Defendant.

Plaintiff Peter Pulido filed a Complaint (Doc. No. 1) against the Commissioner of Social Security seeking reversal of the Commissioner's decision to deny disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(I) & 423.  Plaintiff requested judicial review pursuant to 42 U.S.C. § 405(g) which states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . .

Plaintiff timely filed the Complaint on June 25, 2007 and, as a resident of Marion, Ohio, properly brought his action in this judicial district.

The case was referred to United States Magistrate Judge Vernelis Armstrong for a Report and Recommendation (R&R) pursuant to Local Rule 72.2(b)(2).  Following briefs on the merits from both parties, the Magistrate filed a R&R (Doc. No. 16) that the Court affirm the Commissioner's decision to deny Plaintiff's claim.

This matter is before the Court on Plaintiff's Objection (Doc. No. 17). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings to which Plaintiff objects.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for Social Security DIB on June 13, 2000, alleging disability beginning on July 23, 1999. Plaintiff's application was initially denied. Plaintiff filed a second application on October 23, 2003, which also was denied. After a hearing before an Administrative Law Judge (ALJ), Plaintiff's application was again denied. Finally, the Appeals Council denied Plaintiff's request for review.

## FACTUAL BACKGROUND

This Court adopts the factual background and record of medical evidence as stated in the R&R (pp. 2-8).

## STANDARD FOR DISABILITY

"Under the Social Security Act, 42 U.S.C. § 423(a), an individual is entitled to disability insurance benefit payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability." *Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 423(d)(1)(A)). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. at 529. In addition, "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to

2

do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* (citing 42 U.S.C. § 423(d)(2)).

A five-step sequential analysis determines whether a person is disabled. *Id.*; 20 C.F.R. § 404.1520. This analysis may be summarized as follows:

1. Was claimant engaged in a substantial gainful activity (SGA)?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. Determine the claimant's residual functional capacity and whether claimant can perform past relevant work.

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Only if a claimant satisfies each element of the analysis, including the inability to do other work and meets the duration requirement, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

Under the five-step sequential evaluation analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five to show whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) ("[T]he Secretary bears the burden of proof at Step Five, which determines whether the claimant is able to perform work available in the national economy. But the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step."). The Court considers the claimant's residual

3

functional capacity, age, education, and past work experience, to determine if claimant could perform other work. *Walters*, 127 F.3d at 529. The residual functional capacity is used in step four to assess if the claimant can perform past relevant work, and at step five to determine whether the claimant can adjust to other work. 20 C.F.R. § 404.1520(e); *see also Bowen*, 482 U.S. at 146 n. 5 (1987). The Commissioner may meet the burden at step five with testimony of a vocational expert that supports the ALJ's findings. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In conducting the five-step inquiry described above, the ALJ made eleven findings of fact and conclusions of law (Tr. 16-19), which are summarized in the R&R (pp. 10-11). For purposes of this Court's review, the most significant findings are: (1) Plaintiff did not have a listed impairment or combination of impairments that met or medically equaled a listed impairment under 20 C.F.R. Part 404, Suppart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 & 404.15.26); (2) in light of Plaintiff's age, education, work experience and residual functional capacity, available jobs existed in significant numbers in the national economy; and (3) Plaintiff was not under a "disability" during the relevant period, as defined under the Social Security Act.

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Comm'r. of Soc. Sec.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The

4

Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r. of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). The Court does not review the evidence *de novo*, nor make credibility determinations, nor weigh the evidence. The Court examines the Record only. *Besaw*, 966 F.2d at 1030.

## DISCUSSION

Plaintiff claims the Magistrate Judge incorrectly reviewed the ALJ's application of the Treating Physician Rule and the ALJ's credibility determination. Plaintiff argues (1) the R&R and the ALJ's opinion did not sufficiently explain why the ALJ discounted the medical opinion of Dr. Eboh, Plaintiff's treating physician, in the analysis of impairment and residual functional capacity; and (2) the ALJ did not consider the whole Record when concluding Plaintiff's testimony about his limitations was not entirely credible.

**Treating Physician Rule**

In *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007), the court explained the governing standards of the ALJ's decision regarding medical information submitted in support of a claim.

> In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule. (*citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir.2004)). Because treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical

5

> evidence that cannot be obtained from the objective medical findings alone," their opinions are generally accorded more weight than those of non-treating physicians. 20 C.F.R. § 416.927(d)(2). Therefore, if the opinion of the treating physician as to the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. (*citing* Wilson, 378 F.3d at 544).

The R&R is correct in asserting that the ALJ adopted the opinion of the treating physician, Dr. Eboh, who diagnosed Plaintiff with degenerative disc disease of the lumbar spine. This opinion served as a basis for the ALJ's determination that Plaintiff did **not** qualify for social security benefits because Dr. Eboh did not find that Plaintiff met a Listing. In short, the ALJ did not discount the treating physician's opinion -- he fully adopted it but found it fell short of the required standard of disability under step three of the five-step analysis.

In assessing the medical evidence submitted by Plaintiff, the ALJ determined that none of the reported impairments qualified for benefits under the subsection of Listing 1.04 or the "B" and "C" criteria of Listing 12.04. Listing 1.04 (attached as Exhibit A), which relates to disorders of the spine, requires sensory or reflex loss, arachnoiditis or claudication. Upon review of the entire Record, the ALJ determined these criteria were not met. Plaintiff points to no medical opinion or other Record evidence showing Dr. Eboh or any other physician found these conditions. Similarly, in evaluating "affective disorder" under Listing 12.04 (attached as Exhibit B), the ALJ found the medical evidence did not demonstrate decompensation or other required criteria under that Listing. Thus, Plaintiff fails to demonstrate, by way of specific reference to contrary medical opinion or testimony from any source, how the ALJ discounted Dr. Eboh's opinion when none of the Listings were met.

6

The ALJ did not improperly weigh the opinions of Dr. Eboh and the state agency. It is clear from the Record that Dr. Eboh's opinion, accepted by the ALJ, did not support a finding of disability under the relevant Listings.

**Credibility**

Plaintiff claims the ALJ inadequately explained why he discounted Plaintiff's testimony about his limitations.

The reviewing court does not independently weigh witness testimony and is limited to judging whether the ALJ's explanation was supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). *Rogers* sets forth the standard for credibility determinations:

> However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at * 4. Rather, such determinations must find support in the record. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record."

486 F.3d at 247.

In deciding Plaintiff's residual functional capacity, the ALJ considered Plaintiff's own testimony along with the objective medical evidence. Although the ALJ concluded the impairments could reasonably be assumed to exist, the ALJ decided the Record did not support Plaintiff's claims regarding intensity, persistence and limiting effect. Further, the Record showed Plaintiff had not taken any pain medication for two years, had limited attempts at physical therapy and was engaged in regular daily activities. These considerations are clearly appropriate and germane:

> Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms;

> other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Id.* (citing 20 C.F.R. § 416.929(a)).

Plaintiff contends the credibility determination was not supported by the Record and was merely conclusory. This is not so. The ALJ cited several sources, including the impairments reported by Dr. Eboh and the state's doctors, and the course of treatment and overall consistency of these records. This explanation meets the standard set forth in *Rogers*:

> The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.

*Id.* at 247-48.

Plaintiff claims his ability to participate in his son's home schooling has no bearing on the intensity of his symptoms, and also argues the lack of medication should not have affected credibility because the medication was inconsequential to Plaintiff's condition. Even assuming the ALJ improperly relied on the testimony about home schooling participation, this was not the sole evidence he cited. In addition, the ALJ appropriately considered the nature of the impairments as reported by Dr. Eboh as well as the opinion of the state agency's physicians regarding strength, sensation and reflexes. The ALJ also considered the limited attempts at physical therapy, which was part of the course of treatment. The ALJ's reliance on these objective indicia meets the standard of substantial evidence required by *Rogers*, and his explanation for discounting Plaintiff's testimony as "not wholly credible," while not expansive, was specific and supported.

8

## CONCLUSION

For the foregoing reasons, the Objection (Doc. No. 17) is overruled, and the R&R (Doc. No. 16) is adopted in full. The case is dismissed.

IT IS SO ORDERED.

                                               s/ *Jack Zouhary*
                                               JACK ZOUHARY
                                               U. S. DISTRICT JUDGE

                                               August 12, 2008

# EXHIBIT A

## Listing 1.04

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

**EXHIBIT B**

**Listing 12.04**

Affective disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

   1. Depressive syndrome characterized by at least four of the following:

      a. Anhedonia or pervasive loss of interest in almost all activities; or
      b. Appetite disturbance with change in weight; or
      c. Sleep disturbance; or
      d. Psychomotor agitation or retardation; or
      e. Decreased energy; or
      f. Feelings of guilt or worthlessness; or
      g. Difficulty concentrating or thinking; or
      h. Thoughts of suicide; or
      i. Hallucinations, delusions, or paranoid thinking; or

   2. Manic syndrome characterized by at least three of the following:

      a. Hyperactivity; or
      b. Pressure of speech; or
      c. Flight of ideas; or
      d. Inflated self-esteem; or
      e. Decreased need for sleep; or
      f. Easy distractibility; or
      g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
      h. Hallucinations, delusions or paranoid thinking; or

   3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B.    Resulting in at least two of the following:

    1.    Marked restriction of activities of daily living; or

    2.    Marked difficulties in maintaining social functioning; or

    3.    Marked difficulties in maintaining concentration, persistence, or pace; or

    4.    Repeated episodes of decompensation, each of extended duration;

OR

C.    Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1.    Repeated episodes of decompensation, each of extended duration; or

    2.    A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3.    Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.